**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3598
_____

SAMBA ERIC KONDEH KAMARA,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,

Respondent
_____

On Petition for Review of a Decision of the Board of Immigration Appeals
(BIA-1: A060-573-150)
Immigration Judge: Honorable John B. Carle
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 10, 2018
_____

Before: GREENAWAY, JR., RESTREPO, and BIBAS, *Circuit Judges*.

(Opinion Filed: October 30, 2018)
_____

OPINION[*]
_____

_____

   [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

RESTREPO, *Circuit Judge*.

Samba Eric Kondeh Kamara is removable pursuant to 8 U.S.C. §§ 1227(a)(2)(A)(i) and 1227(a)(2)(A)(iii), as an alien who was convicted of a crime involving moral turpitude and an aggravated felony, respectively. He petitions for review of a final order of the Board of Immigration Appeals ("BIA"), denying his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") 8 C.F.R. § 208.16. We will deny the petition in part and dismiss it in part.

**I.**

As we write solely for the parties, we set forth only the facts necessary for the discussion that follows. A native and citizen of Sierra Leone, Kamara entered the United States in April 2009 as a lawful permanent resident. In April 2016, he pled guilty in the United States District Court for the District of Minnesota to aiding and abetting bank fraud. As part of his plea, Kamara agreed to make restitution, and the District Court held Kamara jointly and severally liable for the amount of $18,958.24.[1] In August 2016, the Department of Homeland Security issued a Notice to Appear, charging Kamara as removable under 8 U.S.C. § 1227(a)(2)(A)(i) (crime involving moral turpitude committed within five years of admission) and § 1227(a)(2)(A)(iii) (aggravated felony).[2]

---

[1] Kamara participated in a large conspiracy to commit bank fraud, but his role was limited to one attempt to deposit a counterfeit check in the amount of $468.47 on January 5, 2012 in violation of 18 U.S.C. § 1344 and 8 U.S.C. § 2.

[2] Under 8 U.S.C. § 1101(a)(43)(M), an aggravated felony includes an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000.

In October 2016, Kamara filed an application for asylum, withholding of removal, and protection under CAT, based on a fear that if he returns to Sierra Leone, he will be harmed or killed because of his late father's political affiliation and government service in the 1970s and 1980s. In November 2016, the Immigration Judge ("IJ") sustained the aggravated felony charge of removability and scheduled a merits hearing for the CAT claim. At the hearing, the IJ heard testimony from Kamara, his brother and his sister. Although he found Kamara credible, the IJ issued a written decision sustaining the charges of removability, determining that Kamara's conviction for aiding and abetting bank fraud constituted both an aggravated felony and a crime involving moral turpitude. The IJ further determined that because Kamara's past experiences in Sierra Leone neither rose to the level of persecution, nor established the likelihood of future harm on account of his family membership, Kamara had failed to demonstrate entitlement to withholding of removal or CAT protection.

Kamara appealed to the BIA, arguing primarily that he had not committed an aggravated felony because the loss stemming from his bank fraud conviction did not exceed $10,000. In November 2017, the BIA dismissed Kamara's appeal, agreeing with the IJ that Kamara's aggravated felony rendered him ineligible for asylum, that the IJ did not err in determining the total financial loss, and that Kamara was not entitled to withholding of removal or CAT protection. This petition for review followed.

**II.**

In cases involving certain categories of criminal aliens, including aliens who, like Kamara, are removable due to an aggravated felony, pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), Congress has instructed that "no court shall have jurisdiction to review any final order of removal. 8 U.S.C. § 1252(a)(2)(C). We do, however, have jurisdiction to examine "constitutional claims or questions of law." *Catwell v. Att'y Gen.*, 623 F.3d 199, 205 (3d Cir. 2010) (citing *Pierre v. Att'y Gen.*, 528 F.3d 180, 184 (3d Cir. 2008) (en banc) (quoting §1252(a)(2)(D)). When, as in this case, "the BIA issues a separate opinion . . . we review the BIA's disposition and look to the IJ's ruling only insofar as the BIA defers to it." *Huang v. Att'y Gen.*, 620 F.3d 372, 379 (3d Cir. 2010) (citing *Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir. 2006).

## A.

The first issue Kamara raises in this appeal is whether his conviction qualifies as an aggravated felony. As this is "a purely legal question, and one that governs our own jurisdiction," we have authority to review, using the *de novo* standard. *Valansi v. Ashcroft*, 278 F.3d 203, 207 (3d Cir. 2002) (citing *Lopez-Elias v. Reno*, 209 F.3d 788, 791 (5th Cir. 2000).

For purposes of § 101(a)(43)(M)(i) of the Immigration and Nationality Act, an aggravated felony includes crimes "involv[ing] fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). As the parties do not dispute that the offense categorically involved fraud, the only dispute is on the second prong: whether the amount of loss to the victim exceeded $10,000. We use a

4

"circumstance-specific" approach, *Singh v. Att'y Gen.*, 677 F.3d 503, 512 (3d Cir. 2012) (quoting *Nijhawan v. Holder*, 577 U.S. 29, 36 (2009) and *Kaplun v. Att'y Gen*, 602 F.3d 260, 265 (3d Cir. 2010)), to determine "if the government has proved by clear and convincing evidence that his offense involved an actual loss to a victim . . . that exceeds $10,000," *id.* at 512. Our review includes not only those documents that may be considered in a modified categorical approach (the indictment, plea agreement, and judgment), but may also include the presentence investigation report ("PSR"), *see Kaplun v. Att'y Gen.*, 602 F.3d at 266, and any "sentencing-related material," *Nijhawan v. Holder*, 557 U.S. at 42.

Kamara argues that because his role in the conspiracy was limited to depositing a counterfeit check in the amount of $468.47, the BIA erred in its calculation of the amount of loss. We disagree. The record shows that the IJ was presented with clear and convincing evidence that Kamara was convicted of a crime with a loss exceeding $10,000. The judgment of conviction as well as the PSR and the order of restitution attribute a loss to Kamara and his accomplices in the amount of $18,958.24. Although the plea agreement was not entered into the administrative record, its absence is not fatal to a circumstance-specific analysis, despite Kamara's argument to the contrary. Our Court has previously noted that "[t]he amount of restitution ordered as a result of a conviction may be helpful to a court's inquiry into the amount of loss to the victim if the plea agreement or the indictment is unclear as to the loss suffered." *Munroe v. Ashcroft*, 353 F.3d 225, 227 (3d Cir. 2003). Together, this "sentencing-related material,"

*Nijhawan*, 557 U.S. at 42, led the IJ and the BIA to conclude that despite the reference in the indictment to the singular check in the amount of $468.47, the PSR and restitution order support the conclusion that the crime he aided and abetted, and for which he was convicted, involved financial losses to the victims in excess of $10,000. Like the Supreme Court in *Nijhawan*, "[w]e can find nothing unfair about the immigration judge's having here relied upon earlier sentencing-related material." *Id.* Accordingly, we will deny the petition in part.

## B.

Next we examine whether we have jurisdiction to consider Kamara's second argument on appeal: that the BIA erred in finding that he had not suffered past persecution nor would suffer future persecution as a result of his late father's political activities. Discretionary or factual determinations fall outside of our jurisdiction in petitions for review. *Rachak v. Att'y Gen.*, 734 F.3d 214, 217 (3d Cir. 2013). Here, Kamara's claim challenges the factual determinations and findings of the IJ, which the BIA adopted in its review. Because such a challenge does not fall within the ambit of our statutorily defined jurisdiction under 8 U.S.C. §§ 1252(a)(2)(C) and (D), we lack jurisdiction to review the merits of this petition for review. Accordingly, we will dismiss in part for lack of jurisdiction.

## III.

For the foregoing reasons, we will deny the petition in part and dismiss in part.